IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

JAMES HERRON,                    )        CIVIL NO. 07-00623 HG-LEK
                                 )
          Plaintiff,             )
                                 )
     vs.                         )
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of Social           )
Security,                        )
                                 )
          Defendant.             )
_____  )

**FINDINGS AND RECOMMENDATION TO DENY
PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION**

          Before the Court, pursuant to a referral by Chief

United States District Judge Helen Gillmor, is Plaintiff James Y.

Herron's ("Plaintiff") Motion for Summary Adjudication

("Motion"),[1] filed on June 20, 2008.  Defendant Michael J.

Astrue, Commissioner of Social Security ("Defendant") filed his

Answering Brief on August 19, 2008, and Plaintiff filed his Reply

on September 8, 2008.  The Court finds this matter suitable for

disposition without a hearing pursuant to Rule LR7.2(d) of the

Local Rules of Practice of the United States District Court for

the District of Hawaii ("Local Rules").  After careful

consideration of the Motion, supporting and opposing documents,

and the relevant legal authority, this Court HEREBY FINDS AND

RECOMMENDS that Plaintiff's Motion be DENIED for the reasons set

_____

          [1] The Motion is also construed as Plaintiff's Opening Brief.

forth below.

## BACKGROUND

Plaintiff filed his Complaint on December 27, 2007, seeking judicial review of the Commissioner's decision that Plaintiff was not entitled to social security disability insurance benefits.  Plaintiff states that he has been disabled since April 1, 2000, primarily due to Buerger's disease.[2] Plaintiff, a twenty-year veteran of the United States Air Force, had past relevant work as a consultant, occupational-safety and health inspector, general manager, and maintenance supervisor. His date last insured ("DLI") was December 31, 2003.  Plaintiff completed two years of college.  Plaintiff initially filed an application for disability benefits on February 22, 2005.  The Social Security Administration ("SSA") initially denied the application on March 7, 2005.  Plaintiff did not file a timely request for reconsideration, but the SSA allowed him to submit a request for hearing on September 14, 2005.  The hearing occurred on April 11, 2006 before Administrative Law Judge ("ALJ") Henry M. Tai, via video conference.  Plaintiff was represented by Dina Rogers, a non-attorney, and Brenda Cartwright testified as a

---

[2] Buerger's disease is also known as thromboangitis obliterans.  Dorland's Illustrated Medical Dictionary 250,(29th ed. 2000).  It is "an inflammatory and obliterative disease of the blood vessels of the extremities, primarily the lower extremities, occurring chiefly in young men and leading to ischemia of the tissues and gangrene[.]"  Id. at 1835.  Ischemia is a blood deficiency in a part of the body.  See id. at 920.

vocational expert ("VE").  [Administrative Record ("AR") at 14.]

The ALJ issued his decision on May 23, 2006.  In determining whether Plaintiff was disabled, the ALJ applied the five-step analysis described in 20 C.F.R. § 404.1520.  First, the ALJ found that Plaintiff had not engaged in substantial, gainful activity since his alleged onset date.  Second, the ALJ noted that Plaintiff's Buerger's disease was a severe impairment, and that he had also been diagnosed with pes planus, tarsal tunnel syndrome, and bilateral tinnitus.[3]  Third, the ALJ found that Plaintiff's impairments did not meet or equal a listed impairment, which would preclude all work.  He also found that Plaintiff was not totally credible regarding his alleged limitations.  [AR at 18.]  Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to do sedentary work.  The ALJ also found that the performance of Plaintiff's past relevant work as a consultant did not require him to perform activities outside of his RFC, and therefore Plaintiff's

---

[3] Pes planus is flat feet.  See Dorland's Illustrated Medical Dictionary at 1362.  "Tarsal tunnel syndrome is a compression, or squeezing, on the posterior tibial nerve that produces symptoms anywhere along the path of the nerve.  The posterior tibial nerve runs along the inside of the ankle into the foot."  American College of Foot & Ankle Surgeons, Tarsal Tunnel Syndrome, http://www.footphysicians.com/footankleinfo/ tarsal-tunnel-syndrome.htm#1 (last visited Feb. 13, 2009).  Its symptoms include: "Tingling, burning, or a sensation similar to an electrical shock"; "Numbness"; and "Pain, including shooting pain".  Id.  Tinnitus is "a noise in the ears, such as a ringing, buzzing, roaring, or clicking."  Dorland's Illustrated Medical Dictionary at 1843.

condition did not prevent him from doing his past relevant work. The ALJ therefore concluded that Plaintiff was not under a disability as defined by the Social Security Act at any time through the date of the decision.  [AR at 19.]  Plaintiff requested review of the ALJ's decision.  On October 26, 2007, the Appeals Council declined review, rendering the ALJ's decision the Commissioner's final decision.  [AR at 4.]

In the instant Motion, Plaintiff argues that the Commissioner's decision should be reversed because the ALJ: 1) made an incorrect residual functional capacity ("RFC") finding; 2) made an improper step four finding because he failed to properly determine if Plaintiff could perform his past work as a consultant; 3) made an improper credibility finding; and 4) should have found Plaintiff disabled under the Medical-Vocational guidelines because he is of advanced age[4] and limited to sedentary work.  Plaintiff's first argument consists of four subissues: the ALJ failed to consider the combination of Plaintiff's impairments; the ALJ failed to assess his ability to do work on a function-by-function basis; the ALJ erroneously focused only on the medical evidence between Plaintiff's onset date and his DLI; and the ALJ erroneously disregarded the

---

[4] Social Security regulations state that: "We consider that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work. . . ."  See 20 C.F.R. § 404.1563(e).

opinions of Plaintiff's treating physicians in favor of the opinion of a non-treating, non-examining, State agency physician.

In his Answering Brief, Defendant argues that the ALJ's RFC finding was based on a proper assessment of the medical evidence. Defendant emphasizes that Plaintiff hardly sought medical treatment during the period in question and that the majority of Plaintiff's complaints and treatment occurred while he was still working. Defendant further argues that the ALJ properly disregarded the opinions of Plaintiff's treating physicians after Plaintiff's insured period and that State agency physicians are highly qualified experts in conducting Social Security disability evaluations. Defendant argues that the ALJ's credibility determination was proper because of Plaintiff's failure to seek consistent treatment during the period in question and Plaintiff was able to work during the 1980's and 90's in spite of his impairments. Defendant contends that the ALJ properly found that Plaintiff could perform his past relevant work as a consultant because, although he may have walked while consulting on one project, the consultant job is generally sedentary.

In his Reply, Plaintiff argues that, under Ninth Circuit law, medical evaluations after the claimant's insured status expires are relevant to pre-expiration condition. Plaintiff emphasizes that, since 1984, he has been diagnosed with

Buerger's disease, peripheral vascular disease, and pes planus, and he has consistently received treatment for chronic pain and numbness in his feet if he stands or walks for more than ten minutes.  Plaintiff argues that the ALJ erred in disregarding the opinion of his treating physician after his DLI because his findings were consistent with those of all his other treating and examining physicians.  Further, Defendant erroneously argues that the State agency physician had superior qualifications because the physician's identity is unknown.  Plaintiff contends that the ALJ erroneously relied on his limited treatment during the period in question because of the ample evidence outside of that period and because the ALJ failed to inquire into the reasons for Plaintiff's failure to seek treatment.  Plaintiff also notes that the ALJ did not cite Plaintiff's work history as a basis for his adverse credibility finding.  Plaintiff argues that his testimony was credible because his symptoms were reasonably related to his diagnoses and the nature of his impairments.  With regard to the ALJ's finding that Plaintiff could perform his past work as a consultant, Plaintiff argues that the ALJ failed to specifically analyze whether Plaintiff could return to the job as he actually performed it and erroneously relied on a generic job description.  Further, the VE failed to analyze whether Plaintiff had any skills that could be transferred to other sedentary work and whether that work existed in significant numbers.  In light of

6

the fact that Plaintiff is of advanced age, there must be little, if any vocational adjustment.

**STANDARD**

I.     **Review of Social Security Decisions**

Federal courts review decisions of the Commissioner, acting through the ALJ, to determine whether the decision is supported by substantial evidence or is based on an error of law. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (citation and quotation marks omitted). Substantial evidence is "more than a mere scintilla but less than a preponderance[.]" Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003) (citation and quotation marks omitted). Under this standard, if the ALJ's decision is supported by the reasonable inferences from the record and there is evidence supporting more than one rational interpretation, the court must affirm the ALJ's decision. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). The court may not substitute its judgment for the ALJ's. See id. at 1196. Further, the court must not reverse the ALJ's decision if the errors were harmless. See Burch, 400 F.3d at 679. In determining whether the decision is supported by substantial evidence, the court must consider the administrative record as a

7

whole, weighing the evidence supporting the decision as well as the evidence in favor of reversal.  See Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999).

## II.  **Summary Adjudication**

The standard for summary adjudication is the same as the standard for summary judgment.  See, e.g., Rexel, Inc. v. Rexel Int'l Trading Corp., 540 F. Supp. 2d 1154, 1160 (C.D. Cal. 2008); see also Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir. 2001) (stating that Federal Rule of Civil Procedure 56(c) is the standard for a motion for summary adjudication).  Summary adjudication, or summary judgment, is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact. See MetroPCS, Inc. v. City & County of San Francisco, 400 F.3d 715, 720 (9th Cir. 2005).  There is no genuine issue of material fact if, based on the record as a whole, a rational trier of fact could not find for the non-moving party.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "A material fact is one that may affect the decision, so that the finding of that fact is relevant and necessary to the

proceedings." W. Sunview Props., LLC v. Federman, 338 F. Supp. 2d 1106, 1114 (D. Haw. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

If the moving party meets its burden, the non-moving party must then present evidence that there is a genuine issue of material fact for trial. In considering a motion for summary judgment, a court must resolve all disputed issues of fact in favor of the non-moving party. See MetroPCS, 400 F.3d at 720.

## DISCUSSION

## I. Eligibility for Disability Benefits

In order to establish that he is eligible for social security disability benefits, Plaintiff had to demonstrate that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" See 42 U.S.C. § 423(d)(1)(A). The ALJ evaluates a claimant's request for disability benefits based on a five-step analysis. See 20 C.F.R. § 404.1520; see also Burch, 400 F.3d at 679.

First, the ALJ determines whether the claimant is engaged in "substantial gainful activity". See 20 C.F.R. §§ 404.1574, 404.1575 (guidelines for "substantial gainful activity"). If the claimant is engaged in substantial gainful

9

activity, he is not disabled.  See § 404.1520(a)(4)(I).

Second, the ALJ considers whether the claimant has a medically severe impairment or combination of impairments and whether the impairment meets the duration requirement.[5]  If the claimant does not have a medically severe impairment, or combination of impairments, that meets the duration requirement, he is not disabled.  See § 404.1520(a)(4)(ii).  The medically severe impairment or impairments must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities[.]"  See § 404.1520(c).

The third factor also considers the severity and duration of the claimant's impairments or combination of impairments.  If the claimant's impairment, or combination of impairments, meets or equals one of the impairments listed in Appendix 1 to Subpart P, Regulation 4, and satisfies the duration requirement, he is disabled.  See § 404.1520(a)(4)(iii).

Fourth, if the claimant is still able to perform his "past relevant work"[6] in light of his "residual functional

---

[5] "Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months.  We call this the duration requirement."  20 C.F.R. § 404.1509.

[6] "Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it."  20 C.F.R. § 404.1560(b)(1) (citing 20 C.F.R. § 404.1565(a)).

capacity",[7] he is not disabled.  <u>See</u> § 404.1520(a)(4)(iv).

At the final step, the ALJ considers the claimant's residual functional capacity, as well as his age, education, and work experience.  If, in light of these considerations, the claimant can adjust to other work, he is not disabled.  If he cannot make the adjustment, he is disabled.  <u>See</u> § 404.1520(a)(4)(v).  The other work the claimant can perform "must exist in significant numbers in the national economy (either in the region where [he] live[s] or in several regions in the country)."  20 C.F.R. § 404.1560(c)(1).

The claimant bears the burden of establishing disability in steps one through four.  Once the claimant establishes that he cannot perform his past relevant work, the burden shifts to the Commissioner to establish that the claimant can perform other work.  <u>See</u> <u>Burch</u>, 400 F.3d at 679.

## II.  <u>ALJ's Five Step Analysis</u>

Plaintiff argues that the ALJ: 1) made an incorrect RFC finding because he, a) failed consider Plaintiff's combined

---

[7] A claimant's "residual functional capacity" is the most he can do in light of the limitations caused by his impairment or impairments and the associated symptoms, including pain.  <u>See</u> 20 C.F.R. § 404.1545(a)(1).  In determining the claimant's residual functional capacity, the ALJ considers the claimant's "ability to meet the physical, mental, sensory, and other requirements of work[.]"  § 404.1545(a)(4).  The ALJ determines a claimant's residual functional capacity based on "all the relevant medical and other evidence" in the record.  <u>See</u> §§ 404.1520(a)(3), 404.1545(a)(3).

impairments, b) failed to perform a function-by-function analysis, c) only relied on medical evidence between the alleged onset date and the DLI, and d) relied on the State agency physician instead of Plaintiff's treating physicians; 2) failed to properly determine if Plaintiff could perform his past work as a consultant; 3) made an improper credibility finding; and 4) should have found Plaintiff disabled under the Medical-Vocational guidelines because he is of advanced age and limited to sedentary work.  The Court will address Plaintiff's arguments as they apply to the five step analysis.

### A.   Step One

The ALJ found that Plaintiff has not been engaged in substantial gainful activity since his alleged onset date.  [AR at 18.]  Neither party contests this finding.

### B.   Steps Two & Three

The ALJ found that Plaintiff's Buerger's disease was severe.  He also noted that Plaintiff has been diagnosed with pes planus, tarsal tunnel syndrome, and bilateral tinnitus.  The ALJ found that Plaintiff's impairments did not meet or equal any listed impairments.  [AR at 15, 18.]  Neither party contests these findings.

### C.   Step Four

The ALJ found that Plaintiff had the RFC to perform the full range of sedentary work and that Plaintiff could perform his

past relevant work as a consultant.  The ALJ therefore found that Plaintiff was not disabled under the Social Security Act.  [AR at 17-19.]

    1.   **RFC**

       a.   **Combination of impairments**

Plaintiff first argues that the ALJ's RFC finding was erroneous because he failed to consider the combination of Plaintiff's impairments.

The regulations governing the SSA state:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. . . .

20 C.F.R. § 404.1523.

In step two, the ALJ found that Plaintiff's Buerger's disease was severe.  The ALJ also took note of Plaintiff's pes planus, tarsal tunnel syndrome, and bilateral tinnitus.  The ALJ then found that Plaintiff's "impairments do not meet or equal the criteria of any listed impairment".  [AR at 15 (emphasis added).] This indicates that the ALJ did consider Plaintiff's severe and non-severe impairments in combination.  The Court notes that Plaintiff did not contest the ALJ's step two finding.

Section 404.1523 required the ALJ to also consider Plaintiff's combination of impairments in determining his RFC. The ALJ stated that, in determining Plaintiff's RFC, he was required to consider, *inter alia*, "all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR § 404.1529, and Social Security Ruling 96-7p." [AR at 16 (emphasis added).]  The ALJ noted Plaintiff's: flat feet; osteomyeltis[8] in his left great toe; chronic numbness in his toes from extended periods of running, walking or standing; temperature changes in his feet; tinnitus and hearing loss; pain and paresthesia[9] in his lower extremities; and tarsal tunnel syndrome.  [AR at 16-17.]  This Court therefore finds that the ALJ did consider Plaintiff's combination of impairments in determining Plaintiff's RFC.

**b.   Function-by-function analysis**

Plaintiff next argues that the ALJ should have assessed Plaintiff's work abilities based on a function-by-function analysis.

The RFC assessment must first identify the

---

[8] Osteomyeltis is "inflammation of bone caused by infection . . . ."  Dorland's Illustrated Medical Dictionary at 1289.

[9] Paresthesia is "an abnormal touch sensation, such as burning, prickling, or formication, often in the absence of an external stimulus."  Dorland's Illustrated Medical Dictionary at 1324.

> individual's functional limitations or
> restrictions and assess his or her work-related
> abilities on a function-by-function basis,
> including the functions in paragraphs (b), (c),
> and (d) of 20 CFR 404.1545 . . . . Only after
> that may RFC be expressed in terms of the
> exertional levels of work, sedentary, light,
> medium, heavy, and very heavy.

Soc. Sec. Ruling 96-8p, at *1 (July 2, 1996).  The relevant

functions include: physical abilities, such as "sitting,

standing, walking, lifting, carrying, pushing, pulling, or other

physical functions (including manipulative or postural functions,

such as reaching, handling, stooping or crouching)," 20 C.F.R. §

404.1545(b); mental abilities, such as "understanding,

remembering, and carrying out instructions, and in responding

appropriately to supervision, co-workers, and work pressures in a

work setting," § 404.1545(c); and other factors, including "skin

impairment(s), epilepsy, impairment(s) of vision, hearing or

other senses, and impairment(s) which impose environmental

restrictions," § 404.1545(d).

SSR 96-8p further states that an ALJ must not initially

express the RFC in terms of exertional levels because the first

issue in step four is whether the claimant can perform his past

relevant work as he actually performed it.  See id. at *3.  Even

when the ALJ turns to the issue whether the claimant could

perform his past relevant work as it is generally performed in

the national economy, an accurate finding may not be possible

without a function-by-function analysis "because particular

occupations may not require all of the exertional and
nonexertional demands necessary to do the full range of work at a
given exertional level." Id. Further, the failure to perform a
function-by-function analysis "could result in the adjudicator
overlooking some of an individual's limitations or restrictions.
This could lead to an incorrect use of an exertional category to
find that the individual is able to do past relevant work as it
is generally performed . . . ." Id. at *4.

        A function-by-function analysis, however, is not
required in all cases. See Bayliss v. Barnhart, 427 F.3d 1211,
1217 (9th Cir. 2005) (not required for impairments that the ALJ
finds not credible or not supported by the record).  In
determining Plaintiff's RFC, the ALJ discussed Plaintiff's
documented limitations on his ability to stand, walk, or run for
extended periods of time and he discussed whether Plaintiff
established any limitations on his ability to sit.  [AR at 16-
17.]  These are clearly the functions at issue in this case.  In
the instant Motion, Plaintiff argues that, had the ALJ considered
his need "to shift from sitting to standing/walking at will" and
"to take unscheduled breaks for 10 minutes every two hours", the
ALJ would have found that he could not do sedentary work.  [Mem.
in Supp. of Motion at 20.]  During the hearing before the ALJ,
Plaintiff testified regarding the limitations to his ability to
stand and walk for more than ten to fifteen minutes at a time and

16

his need to get up after sitting for one to two hours while doing activities at home such as watching television.  [AR at 300-03.] Plaintiff apparently does not claim any limitations in his weight bearing functions as he testified that he could lift and carry up to up to 100 pounds, although he did note that doing so decreased the amount of time he could stand or walk.  [AR at 301-02.] There is no indication in the record of any limitations to Plaintiff's mental functions or other functions, such as vision or hearing.

This Court therefore finds that the ALJ addressed all of the relevant functions in this case and therefore his function-by-function analysis was appropriate.

### c.   **Scope of medical evidence**

Plaintiff also contends that the ALJ's RFC finding was erroneous because the ALJ focused on medical evidence between the alleged onset date and the DLI.

Medical evidence after a plaintiff's DLI can be relevant to the extent that it shows the plaintiff's condition prior to his DLI.  See, e.g., Lingenfelter v. Astrue, 504 F.3d 1028, 1033 & n.3 (9th Cir. 2007) (noting that although the plaintiff had to establish that he was disabled for at least twelve months between his alleged onset date and his DLI, "reports containing observations made after the period for disability are relevant to assess the claimant's disability"

(citation and quotation marks omitted)).  The Ninth Circuit has held that medical records cannot be disregarded solely because they are after the plaintiff's period of disability coverage. See Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988).

The ALJ's decision, however, indicates that he did not disregard medical evidence solely because it was from after Plaintiff's DLI of December 31, 2003.  The ALJ in fact gave "great weight" to a December 2004 ratings decision from the Department of Veterans Affairs which awarded benefits effective January 12, 1998.[10]  [AR at 17.]  The ALJ also considered June 2005 findings indicating bilateral tarsal tunnel syndrome.  The ALJ discussed a physical residual functional capacity questionnaire completed by Kevin Hitosis[11] on February 15, 2006.  The ALJ, however, gave Mr. Hitosis' opinion "limited weight" because he "did not begin to treat [Plaintiff] until June 2005 (substantially after [Plaintiff's] insured status expired)."  [Id.]  Thus, the ALJ did consider Mr. Hitosis' opinion and did not disregard it solely because it was from after Plaintiff's insured period.  This Court therefore rejects Plaintiff's

---

[10] The ratings decision was based on, *inter alia*, an audio examination dated June 4, 2004, and two VA examinations dated August 20, 2004, and August 30, 2004.  [AR at 106.]

[11] The ALJ's decision refers to Mr. Hitosis as "Dr. Hitosis", but he is in fact an "MSN, ARNP", *i.e.* he has a master of science in nursing degree and is an advanced registered nurse practitioner.  [AR at 292.]

argument that the ALJ's RFC finding was erroneous because he focused on medical evidence between Plaintiff's alleged onset date and his DLI.

### d.   **Weight given to medical opinions**

Plaintiff next argues that the ALJ's RFC finding was erroneous because he improperly relied on the opinion of the State agency physician instead of on Mr. Hitosis' treating opinion.[12]  Plaintiff argues that the State agency physician neither treated nor examined him and his opinion cannot be considered substantial evidence because his identity and qualifications are unknown.  Plaintiff also argues that the ALJ erred in giving Mr. Hitosis' opinion limited weight because he did not treat Plaintiff until after Plaintiff's DLI because the State agency physician also rendered his opinion after Plaintiff's DLI.

When there is conflicting medical evidence, the ALJ must determine the relative credibility of the physicians and

---

[12] Although Plaintiff argues that the ALJ failed to "give proper weight to Plaintiff's treating <u>physicians</u>," [Mem. in Supp. of Motion at 18 (emphasis added),] he only names Mr. Hitosis. [<u>Id.</u> at 18-20.]  Plaintiff noted that "all of [his] treating physicians have supported his severe limitations, diagnoses and chronic complaints of pain and numbness in his feet, and Mr. Hitosis found Plaintiff could not perform even sedentary work." [<u>Id.</u> at 19.]  Plaintiff, however, did not identify any other physician whose opinion the ALJ allegedly gave insufficient weight to, and the ALJ did consider Plaintiff's long-standing diagnoses and chronic complaints.  It appears that Plaintiff is primarily concerned with the ALJ's rejection of Mr. Hitosis' opinion that Plaintiff could not do sedentary work.

resolve the conflict.   See Batson v. Comm'r of Soc. Sec. Admin.,
359 F.3d 1190, 1195 (9th Cir. 2004).   The ALJ must generally give
greater weight to the opinion of the treating physician and "must
give specific, legitimate reasons for disregarding the opinion of
the treating physician."   Id. (citation and quotation marks
omitted).

        Mr. Hitosis, however, is not a physician.   He is a
nurse practitioner.   The Ninth Circuit has stated that
"[a]cceptable medical sources specifically include licensed
physicians and licensed psychologists, but not nurse
practitioners."   Gomez v. Chater, 74 F.3d 967, 971 (9th Cir.
1996) (citing 20 C.F.R. § 404.1513(a)(1) and (3)) (some citations
omitted).   In Gomez, the Ninth Circuit Court of Appeals held that
the ALJ properly considered the opinion of a nurse practitioner
who treated the plaintiff because the nurse practitioner
"consulted with Dr. Kincade[, Gomez's family physician,]
regarding Gomez's treatment numerous times over the course of her
relationship with Gomez", "worked closely under the supervision
of Dr. Kincade and she was acting as an agent of Dr. Kincade in
her relationship with Gomez."   Id.   In the present case, there is
no indication that Mr. Hitosis was acting as an agent under the
supervision of Plaintiff's physician.

        This Court notes that the ALJ mistakenly believed that
Mr. Hitosis was a physician.   The Court, however, declines to

apply the treating physician standard to his opinion based on the ALJ's mistaken belief because under Social Security Regulations, a nurse practitioner is not an acceptable source of medical evidence. <u>See</u> 20 C.F.R. § 404.1513(a). This Court therefore rejects Plaintiff's argument that the ALJ should have given Mr. Hitosis' opinion the weight of a treating physician.

Plaintiff also argues that the ALJ erred in affording great weight to the agency physician's opinion because the agency physician's identity and qualifications are unknown. The Court disagrees.

> <u>State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act.</u> As members of the teams that make determinations of disability at the initial and reconsideration levels of the administrative review process (except in disability hearings), <u>they consider the medical evidence in disability cases and make findings of fact on the medical issues</u>, including, but not limited to, the existence and severity of an individual's impairment(s), the existence and severity of an individual's symptoms, whether the individual's impairment(s) meets or is equivalent in severity to the requirements for any impairment listed in 20 CFR part 404, subpart P, appendix 1 (the Listing of Impairments), and the individual's residual functional capacity (RFC).
>
> **POLICY INTERPRETATION:** Because State agency medical and psychological consultants and other program physicians and psychologists are experts in the Social Security disability programs, the rules in 20 CFR 404.1527(f) . . . require administrative law judges and the Appeals Council to consider their findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining

<u>physicians and psychologists.  Administrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions</u>

Soc. Sec. Ruling 96-6p, at *2 (July 2, 1996) (emphases added).

Thus, agency physicians in general are considered highly qualified.  Further, other courts have ruled that an ALJ may consider evaluations from unidentified agency physicians.  <u>See</u>, <u>e.g.</u>, <u>Irelan v. Barnhart</u>, No. Civ. A. 02-1192, 2002 WL 32349385, at *6-*7 (E.D. Penn. Oct. 10, 2002).  In <u>Irelan</u>, three different agency physicians completed Physical Functional Capacity Assessments of the plaintiff, but each physician's signature was illegible.  <u>See id.</u> at *6.  The court ruled that, although the ALJ rejected their findings that the plaintiff could perform medium to heavy work, he "was entitled to evaluate the evidence as a whole, including evaluations made by the agency physicians, and arrive at an RFC assessment which differed from" the treating physician's.  <u>See id.</u> at *7.

Finally, although the agency physician completed his assessment after Plaintiff's DLI, an agency physician considers the medical evidence in a disability case and can be given weight if "they are supported by evidence in the case record[.]"  Soc. Sec. Ruling 96-6p, at *2.  This Court finds that the agency physician's opinion was supported by evidence in the record, and therefore the ALJ did not err in giving great weight to the State

22

agency physician's opinion.

### 2.  Past relevant work as a consultant

After determining that Plaintiff had the RFC to perform
sedentary work, the ALJ found, based on the VE's testimony, that
Plaintiff "could return to his past relevant work as a consultant
as previously performed and as generally performed in the
national economy." [AR at 18.] Plaintiff argues that the ALJ
failed to properly determine whether Plaintiff could return to
his past consultant work as he actually performed it.

During the hearing before the ALJ, Plaintiff testified
that his consulting job entailed assessing a typhoon that
occurred in 1998. It required him to walk in the field and tour
the parameters of the disaster area. [AR at 298.] He also
testified stated that he left his past jobs because he could not
stand for very long without having to sit. According to
Plaintiff "they couldn't utilize my services without me being
there on my feet." [AR at 299.] The VE testified that the
consultant position, Dictionary of Occupational Titles ("DICOT")
#189.167-010 is skilled and sedentary. [AR at 310.]

> Under sections 404.1520(e) . . . of the
> regulations, a claimant will be found to be "not
> disabled" when it is determined that he or she
> retains the RFC to perform:
>> 1. The actual functional demands and job
>> duties of a particular past relevant job; *or*
>> 2. The functional demands and job duties of
>> the occupation as generally required by
>> employers throughout the national economy.

Soc. Sec. Ruling 82-61, at *2 (1982) (emphasis in original). Social Security Ruling 82-61 also notes that "[f]inding that a claimant has the capacity to do past relevant work on the basis of a generic occupational classification of the work is likely to be fallacious and unsupportable." Id. at *1. It also recognizes that, in some cases, a claimant's description of his past work may significantly differ from the description in the DICOT. The ALJ can resolve such conflict by, *inter alia*, contacting the employer or initiating further contact with the claimant. See id. at *2.

In the present case, Plaintiff's description of his past work as a consultant differed from the DICOT definition and his testimony indicated that the position required more than merely sedentary exertion. The ALJ did not inquire further, and his apparent reliance on a general finding that Plaintiff could do sedentary work to determine that Plaintiff could return to his past consulting work as he actually performed it was likely fallacious and unsupportable. This Court, however, finds that any error in this finding was harmless.

The consultant position, as it exists in the national economy, is a "Professional and Kindred Occupation" with a sedentary exertion level. See DICOT #189.167-010.

> Under 20 C.F.R. § 404.1567, sedentary work
> involves:
>> lifting no more than 10 pounds at a time, and
>> occasionally lifting or carrying articles

like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567.  Social Security Ruling 83-10 defines "occasionally" as "occurring very little up to one-third of the time."  "[P]eriods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday."  Id.  In addition, the Commissioner has expressly stated that a person who is unable to sit for prolonged periods of time is incapable of engaging in the full range of sedentary work.  SSR 83-12 ("In some disability claims, the medical facts lead to an assessment of [Residual Functional Capacity] which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing.  The individual may be able to sit for a time, but must then get up and stand or walk for a while before returning to sitting.  Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work.").  Pursuant to these rulings and regulations, it is true that to be physically able to work the *full range* of sedentary jobs, the worker must be able to sit through most or all of an eight hour day.

Aukland v. Massanari, 257 F.3d 1033, 1035-36 (9th Cir. 2001) (quotation marks and some citations omitted) (alterations and emphasis in original).  Social Security Ruling 83-12 also notes that:

(Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch

25

> periods, etc., would still be able to perform a
> defined range of work.)
> There are some jobs in the national
> economy--typically professional and managerial
> ones--in which a person can sit or stand with a
> degree of choice.  If an individual had such a job
> and is still capable of performing it, or is
> capable of transferrng (sic) work skills to such
> jobs, he or she would not be found disabled.

Soc. Sec. Ruling 83-12, at *4 (Nov. 30, 1982).

Based on these legal principles and Plaintiff's testimony that he can stand for ten to fifteen minutes at a time, sit for one to two hours before having to get up, and walk for one Hawaii city block if he can sit for half an hour thereafter, [AR at 300, 303,] this Court finds that the ALJ did not err in finding that Plaintiff could perform his past relevant work as a consultant, as the job is generally performed in the national economy.

**E.**    **Step Five**

Insofar as the ALJ found that Plaintiff was not disabled under step four, he did not address step five.

In the instant Motion, Plaintiff argues that the ALJ should have found him disabled under Rule 201.06 of the Medical Vocational Guidelines because he is of advanced age and the ALJ found him limited to sedentary work.  The rules set forth in the tables of the Medical Vocational Guidelines are referred to as the "grids".  See, e.g., Tommasetti v. Astrue, 533 F.3d 1035, 1043 (9th Cir. 2008).

> The grids are applied at the fifth step of the analysis under 20 C.F.R. § 404.1520, and present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant. [Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).] The grids categorize jobs by their physical-exertional requirements, and set forth a table for each category. A claimant's placement with the appropriate table is determined by applying a matrix of four factors identified by Congress-a claimant's age, education, previous work experience, and physical ability. For each combination of these factors, they direct a finding of either "disabled" or "not disabled" based on the number of jobs in the national economy in that category of physical-exertional requirements. Id. If a claimant is found able to work jobs that exist in significant numbers, the claimant is generally considered not disabled. Heckler v. Campbell, 461 U.S. 458, 461, 103 S.Ct. 1952, 76 L.Ed.2d 66 . . . (1983).

Tommasetti v. Astrue, 533 F.3d 1035, 1043 n.4 (9th Cir. 2008) (citation and block quote format omitted) (alterations in original).

Rule 201.06 provides that, if a person is of advanced age, with a high school education or more but without education that provides direct entry into skilled work, and has previous work experience in skilled or semi-skilled positions where the skills are not transferrable, the person is disabled. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, Rule 201.06. Further, "[i]n order to find transferability of skills to skilled sedentary work for individuals who are of advanced age (55 and over), there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the

industry." <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(f).
Plaintiff argues that, because the ALJ failed to find that he had
transferable skills, the ALJ should have found that he was
disabled under Rule 201.06.

This Court, however, finds that the grids do not apply
in this case.

> The following rules reflect the major functional
> and vocational patterns which are encountered in
> cases which cannot be evaluated on medical
> considerations alone, where an individual with a
> severe medically determinable physical or mental
> impairment(s) is not engaging in substantial
> gainful activity and <u>the individual's
> impairment(s) prevents the performance of his or
> her vocationally relevant past work</u>.

<u>Id.</u>, § 200.00(a) (emphasis added).  Insofar as the ALJ properly
found that Plaintiff could return to his relevant past work as a
consultant, as the job exists in the national economy, the grids
do not apply.

## III. <u>Credibility Determination</u>

Finally, Plaintiff argues that the ALJ made an improper
credibility determination.  The ALJ found that Plaintiff's
"<u>hearing testimony</u> is not entirely credible in light of the
discrepancies between the claimant's assertions, and the limited
medical information contained in the record." [AR at 17 (citing
SSR 96-7p) (emphasis added).]  Plaintiff argues that his symptoms
are reasonably related to his medical conditions.  Plaintiff
acknowledges that the medical evidence between the alleged onset

date and his DLI was "more sparse", but he argues that there is substantial evidence from 1984 to 2006 establishing his condition.  [Mem. in Supp. of Motion at 25.]

        The Ninth Circuit has stated that, "[i]n evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005). Unless there is evidence that the plaintiff is malingering, the ALJ must give clear and convincing reasons for rejecting his pain testimony.  The ALJ must identify what testimony was not credible and what medical evidence disproved the plaintiff's testimony; the ALJ cannot render only general findings.  See id.

        The ALJ found that Plaintiff's Buerger's disease was a severe impairment and the ALJ noted that he had also been diagnosed with pes planus, tarsal tunnel syndrome, and bilateral tinnitus.  [AR at 15.]  In reviewing Plaintiff's medical history, the ALJ also noted Plaintiff's March 1985 diagnosis of "peripheral vascular compromise probably secondary to smoking[,]" which did not prompt any treatment recommendations.  [AR at 16.] Thus, the ALJ did consider Plaintiff's medical conditions but apparently discounted Plaintiff's assertions about the extent to which they limited his ability to perform certain physical

functions.  The ALJ noted Plaintiff's chronic problems with
running, walking, or standing for prolonged periods of time.  [AR
at 16-17.]  The ALJ, however, noted that Plaintiff had not
alleged limitations on his ability to sit and that Podiatrist
Teresa Damian, D.P.M., never noted that he had any difficulties
sitting.  [Id.]  In addition, the ALJ stated that "[t]here is
little, if any, medical documentation covering the period from"
Plaintiff's alleged onset date to his DLI.  [AR at 17.]

        In fact, the majority of the medical records in this
case are either from the mid-1980's or after 2004.  [AR 2-3 (list
of Medical Records).]  Only Exhibit 15F, the Veterans Affairs
Pacific Islands Clinic Records, covers the range February 3, 1998
to November 28, 2005.  [AR at 3.]  Exhibit 15F, however, contains
one entry for February 3, 1998, an apparent employment physical,
then jumps to a June 15, 2005 radiologic examination report
regarding Plaintiff's pes planus.  [AR at 283-84.]  Thus, there
is no indication in the record that Plaintiff sought treatment
for his conditions either shortly before his alleged onset date
or any time between the onset date and his DLI.  Although
Plaintiff was able to work for approximately fifteen years with
his foot problems, he claims that they prevented him from all
work after April 1, 2000.  It was permissible for the ALJ to
infer that Plaintiff's pain "was not as all-disabling as he
reported" in light of the fact that he did not seek any

treatment.  Cf. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (holding inference permissible because the plaintiff "did not seek an aggressive treatment program and did not seek an alternative or more-tailored treatment program after he stopped taking an effective medication due to mild side effects" (citing Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where petitioner's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received"))).

In addition, although the medical records often noted Plaintiff's persistent limitations in standing and walking, they do not note any limitations in his ability to sit.  [AR at 117 (7/6/05 - neurology study by Kwang-Ming Chen, M.D.), 120 (6/28/05 - Mr. Hitosis), 122 (8/17/05 - Dr. Damian), 234 (8/20/04 - physician's name illegible, part of compensation and pension examination), 276 (8/21/05 - Mr. Hitosis).]  The only evidence of Plaintiff's alleged limitations in his ability to sit is Mr. Hitosis' RFC assessment, in which he opined that, in a competitive work situation, Plaintiff could sit for more than two hours at one time before needing to get up, but could only sit

31

for a total of four hours in an eight-hour work day.  [AR at 290-91.]  As stated *supra*, a nurse practitioner is not an acceptable source of medical evidence.  Further, the medical record does not support Mr. Hitosis' opinion about Plaintiff's sitting limitations.  This Court therefore finds that substantial evidence supports the ALJ's adverse credibility finding based on Plaintiff's failure to seek treatment during the relevant period and the lack of medical evidence supporting Plaintiff's alleged sitting limitations.  The ALJ's credibility finding should not be disturbed.  See <u>Tommasetti</u>, 533 F.3d at 1040.

## IV.  Finding that Plaintiff is Not Disabled

Having rejected all of Plaintiff's arguments of error and having reviewed the record in its entirety, this Court finds that there is substantial evidence supporting the ALJ's finding that Plaintiff is not is disabled and that the ALJ's finding was not based on an error of law.  This Court therefore finds that the ALJ's decision denying benefits, which was ultimately adopted by the Commissioner, should not be disturbed.

## CONCLUSION

On the basis of the foregoing, this Court HEREBY FINDS AND RECOMMENDS that Plaintiff's Motion for Summary Adjudication, filed June 20, 2008, be DENIED.  This Court further recommends that the Commissioner's decision denying Social Security disability insurance benefits be AFFIRMED.

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAII, February 19, 2009.



 /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge

**JAMES Y. HERRON V. MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY; CIVIL NO. 07-00623 HG-LEK; FINDINGS AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION**